## In re NATIONAL S. S. LINES, Limited.

(Circuit Court of Appeals, Second Circuit. April 3, 1922.)

No. 241.

**Bankruptcy ⊜91(2)—Evidence held to prove insolvency of bankrupt.**

In bankruptcy proceedings, evidence *held* to prove that alleged bankrupt was insolvent on certain date.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the National Steamship Lines, Limited, bankrupt. From an order approving the report of a special master and adjudicating it a bankrupt, the bankrupt appeals. Affirmed.

Appeal from an order of the District Court for the Southern District of New York, entered May 14, 1921, approving the report of a special master, and adjudicating appellant a bankrupt. The sole question requiring consideration is whether National Steamship Lines, Limited, was insolvent when it made certain payments on November 22, 1919.

Kellogg & Rose, of New York City (Abram J. Rose and Asa B. Kellogg, both of New York City, of counsel), for bankrupt appellant.

Root, Clark, Buckner & Howland, of New York City (Ellis W. Leavenworth, of New York City, of counsel), for appellees Coastwise Transp. Co. and others.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge. According to a statement prepared by Ciaccio, the bookkeeper, who installed and supervised the bookkeeping system of the bankrupt, there was on November 22, 1919, a surplus of $128,132.36 in favor of the bankrupt. An examination of the record demonstrates that there was not any such surplus, because certain items were improperly credited, and at least one item improperly omitted from liabilities.

Assets improperly credited:

(1) $14,418.37, A. H. Bull & Co. This was for unearned freight from an uncompleted voyage of the steamship Jean from Buenos Aires to Rotterdam. It is apparent from the testimony of Dick Chiarello and of Ciaccio that this was not an asset, and the special master reported that "the respondent [appellant here] consented that this asset should be taken off."

(2) $8,917.50, Coastwise Transportation Company. This was an item of unearned freights from the steamship Bristol, which was part of a larger item. The special master reported that appellant consented to the striking out of this item.

(3) $9,440, Smith & Schipper. This was said to be a claim due from freight in connection with the Jean. After considering the testimony, the master decided that this alleged asset was improperly marshaled, and with this conclusion we agree.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

(4) $40,611.33, United Maritime Corporation. Both sides agreed that this debt has never been collected. After taking testimony, the master concluded that this was a bad debt, and not an asset, and with this conclusion we also agree. The total of the foregoing is $73,387.19.

On the liability side, there is not included the liability for the charter hire on steamship Bristol, amounting to $66,500. On November 29, 1919, National Steamship Lines, Limited, by Hertz, its vice president, wrote Coastwise Transportation Company as follows:

"In regard to the charter money for the month of November 21, 1919, to December 21, 1919, on the steamer Bristol, we regret to say that freights have so declined, and expenses increased, we are forced to the conclusion that we will be unable to continue with the charter and finance the resulting losses. We give you prompt notice of the situation, and trust that the matter may be closed up without inconvenience."

The charter hire was at the rate of $66,500 per month in advance, and thus this charter hire had not been paid on November 22d. There had been deposited with the owners the sum of $66,500 for security. The master stated in his report that the $66,500 due November 21st had never been paid "except by application of deposit," but we find no evidence to support the statement that the deposit was thus utilized. It may well be that the deposit had been applied to a previous month's hire, as is stated by counsel for appellees.

Restating the account: From apparent assets of $278,461.17 must be deducted $73,387.19, leaving as assets $205,073.98. To the liabilities of $150,368.81 must be added $66,500, making the total of liabilities $216,868.81. Thus, instead of a surplus of $128,092.36 (incorrectly stated, in Exhibit 14, as $128,132.36), there was a deficit of $11,794.83, without considering the status of the Hilton and Jean deposits.

From the foregoing, it is apparent that appellant was insolvent on November 22, 1919, and, as the acts of bankruptcy were clearly proved, the order of adjudication was right.

Order affirmed.